We'd be happy to hear argument in Solars versus Internal Revenue Service. Ms. Tadros, is it? Ms. Tadros? Good morning. May it please the Court, Mariam Tadros and Robert J. Cunningham Jr. here on behalf of the appellant Solars, Inc. And the reason that we are here before you this morning is that Solars has consistently struggled to be able to obtain something as simple as its own tax returns. Solars had initially filed its FOIA request with the service. The service withheld several pages. Solars exhausted... The issue here is 10 documents, right? Yes. All right. Why don't we talk about the 10 documents? Well, we appeared before Judge Brinkema on the motion for summary judgment where she addressed some but not all of the 10 documents. We had requested a Vaughn Index, which was granted by the trial court, and the court conducted an in-camera review. We contend that the court's in-camera review of the documents and its oral ruling from the bench did not comport with the nine FOIA exemptions that... The FOIA exemptions generally. First with the handwritten notes. The court gave a ruling regarding the handwritten notes that was less than clear. The handwritten notes, to be clear, were handwritten notes of Agent Arun Sharma. He was having a conversation with Solar CPA, obtaining information from that CPA. Yet, the service has contended that the entirety of the notes are exempt under Exemption 5, the deliberative process. The court struggled to read the notes, stating that it, in fact, could not read the notes. And it stated, it can withhold the pages in full. I have to tell you, they're almost indecipherable. Every now and then, you can maybe make out a word, so I'm not sure what, if any, value they would give the plaintiff anyway. That is not the standard under FOIA. The thrust of FOIA is disclosure. It is there to shed light on... What Brinkham has said was that the notes contained... Did she examine those in-camera? I know she examined a great many of the documents here in-camera. Did she look at the revenue agent's handwritten notes in-camera? She did, but she could not read them. So she didn't actually make any finding about the notes. If we look closely at what she's... I thought she did make a finding, that if it fell within Exemption 5, that it reflected the revenue agent's thoughts and decisions. Otherwise, she wouldn't have found Exemption 5 applied. Well, she said, obviously, they would represent the Curacaoan points the agent was writing down. So they either reflect the mental processes of the revenue agent and thoughts and possible direction of the investigation, or they reflect an area where the revenue agent sought legal advice. So, when you read her... Could we refer to a district court on that after... if the district court had examined the notes in-camera? I'm sorry, I couldn't hear that. Wouldn't we defer to a district court on that kind of thing if the district court had examined the notes in-camera and found that a particular exemption applied? I mean, there is some danger in having these FOIA cases become massive second litigations. Well, the court reviews the legal findings of the district court de novo, and whether a document fits within an exemption, that is also reviewed de novo. So, even though the court... Well, maybe, but I mean, whether the... there's a subsidiary question there, and that is whether the revenue agent's notes are reflective of a deliberative process, which would have been thoughts and recommendations and the like. And I could well see a revenue agent taking down thoughts about somebody's credibility, or somebody's... or what he might recommend to his superior, or, you know, I need to check on this point about it. I mean, it doesn't seem to me implausible that this... It's not implausible, but it is the services... I said implausible. It's the services obligation to meet that standard. So, even taking... let's just say that this agent had written down a note about the credibility of the CPA. There's no reason that the rest of the notes could not have been provided. The court did not make a segregability determination with respect to the notes. The court was required to do so, to the extent that there were facts contained within the notes, and you could redact the deliberations to the extent that they meet the standard. Solers was entitled to see those facts as they were written down by the agent. So, there was no segregability determination, and I think that's the first problem. The second problem is the notes had to be deliberative. They had to also be pre-decisional, and here there was really no indication that the notes were deliberative, that they went to the give and take of the process, and that they actually affected the formulation of agency policy. So, the issue that we would have here is that if someone writes something down and they take notes on any particular subject, that would, if we were to go with the services argument, every time that happened, that would be exempt from FOIA. Doesn't it get pretty close to that before, I mean, when they make a deliberation, they do an email, they'll do a document, they'll do an opinion, they'll do something, but when somebody is making notes of something that's taking place, he's making notes for what purpose? He's making notes to remind him later of what he's to do and how he's to pursue it, and if it's to record a fact that he thought was important, he puts it down, he says, check this, I'm not sure about this, they claim this, and he can put a question mark there expressing. These are all just notes. They can't be deliberations or decisions. They've got to be a form of deliberation, but the bigger thing is the question Judge Wilkinson asked. The district court looked at these four pages and concluded that they were of that character and therefore fell within the, that's a factual question, of whether they contain that type of information. And my point on that was the district court did not actually come up with that finding. They state they either reflect this, so after the district court said it could not really read the notes, it said, again, I believe, because it applied the exemption, said these are part of the deliberative process. How can that not be a finding if it applies the exemption after having looked at the particular note? If the court found they're part of the deliberative process, whether they fit within Exemption 5, that is reviewed de novo by this court. Whether a document fits within an exemption is de novo. Not the findings about the document. If the court makes a finding and says, I find that these notes are difficult to read, but based on what I'm able to read, they are deliberative. The question of whether that now fits within a category in the FOIA statute is de novo. Yes. But the question about whether they contain deliberative information after her reading the documents is a factual finding. I would agree with that, but that's not what the district court found. So after saying she can't read them, so they either reflect the mental processes of the revenue agent and thoughts on possible direction and investigation, or they reflect an area where the revenue agent sought legal advice. And this really goes to the attorney client privilege. You know, the fact that these things are handwritten, there's no formal document or agency document. Well, I wouldn't, you know, I make handwritten notes in the middle of conferences all the time. I think most of us do. We put them into the iPad or wherever, and I always thought, you know, those notes, they were contemporaneous, but they were still part of an overall pre-decisional deliberative process. Assuming that they are pre-decisional, which the court did not find that they were clearly making decisions, the court found that these were notes taken of, what, during a meeting or some kind? It was during a conversation with Solorz's CPA, and they also had to be deliberative in nature. I know, but there's not decisional at that point. Isn't it pretty obvious it can't be a decision being made? I mean, he's making the notes for some future action. What? He wouldn't hand those notes over and say, here's our decision, would he? Did you expect that based on what the court said? Well, we actually don't know if he handed the notes to anybody, which is a different issue. If you do take these notes and you keep them to yourself, and they're not actually going to the back and forth of the agency policy, there's nothing that would shield them from disclosure to Solorz or to the public generally, that if you do take these notes on your own, and you put them in your file cabinet, or you put them in the Solorz audit file, and they are never used by the agency, there's no deliberation, there's no back and forth, and they don't fall under Exemption 5. But even if you had the back and forth of, please check into this, or I don't know if I believe his credibility, the rest of the document that contained the information from an hour with me, it seems to me that when somebody takes a note of a conversation and writes down, a CPA says 20 different things, and the guy writes down two things that he wants to recall and use later, nothing else, just the two things of the 20. It seems to me that in and of itself is characterized by deliberative. He is now reminding himself of two things that impressed him and he the reason he left the other 18, he didn't think it's important enough. He made a deliberative decision as to what to record. It clearly is not decisional. This is for his personal use in carrying on his function. I don't quite understand why you think this document is anything more than just a recordation of what the guy thought was important and maybe what he I presume the court may have already looked at the documents. The government clearly has seen the documents. The trial court saw the documents. We are here as counsel for Solers. We have not follow up on Judge Nima. You know, you you take notes on what you think is important and you don't take notes on what you don't think is important. You think, oh, this might be important. I don't want to forget it. I'll I'll write it down or I'll jot it down. Why wouldn't that be part of a deliberate process sifting what is what you believe is significant and what you believe is is is not? I mean that part of the deliberative process is is separating the important from the unimportant or the irrelevant and that I can't see where Judge Brinkman went wrong on that. With that, if you do think something's important and you've highlighted it for a reason and you note that reason, then that could potentially be protected. Assuming it actually goes to an agency decision, the agency considers it and it's the personal opinion in a conference. When you write down, I mean, the action is going pretty fast and you don't really take down and say this is important and it's important for for reasons A, B and C. I mean, most of the notes are a little bit sketchy and I can understand they might be illegible, but they they may be elliptical and incomplete and you go back and flesh them out later. But I mean, the reality of it all, you might just put in a few words that remind you of something. You don't necessarily supply a reason right there on the spot. And you may not, but where you have what we're talking about is four pages. This isn't someone who is scratching down two things that he thinks are important during a phone call. This is someone who is processing facts, who is writing down copious notes. Four pages is a lot of notes and the problem is that how long the conference was with your CPA. It was it was an hour. I mean, four pages is not a lot. It was an hour long. Four pages we'd submit is a long time, but the facts that were a lot of notes when it's a long time, right? If you write down everything, there are certain facts in there. But the issue is that the court was required to make the segregability determination. Well, they did it in camera. You don't have to make a segregability determination when you reviewed it in camera speaking for the district judges in the country. Well, the court would still have to go through that determination. What we had was the Vaughn indices that contained just the bare bones language. And when the court reviewed it, the court couldn't possibly have made that determination when it couldn't read the notes and what the trial court. She also had the lawyer's summary that it was consisting of the agent's thoughts, impressions, possible direction of the examination. And it was not where the examination was going to go and the examination wasn't closed for another year, right? And the examination was not closed until a few months later. But what we have here still is that the court could have said to the service, can you transcribe the notes so I can read them in their entirety? Or can you provide an affidavit regarding what these mental impressions are? That's what Mr. Maher's affidavit was. Well, his affidavit, we would submit it was conclusory at best because it said he took four notes and what we got was a conclusory Vaughn index from the service. We are left with the issue of no one has really made that determination regarding whether these handwritten notes that the trial court could not read were in fact segregable. See, the problem I'm having with your case overall is that I look through all these with some care and they seem to me to be very damaging to the tax collection process which, you know, is not our favorite time of year coming up on April 15th. We don't, none of us enjoy doing this but it's important for the country that it work efficiently and it's not just the deliberative process that this strikes out but your claims compromise the privacy rights of third parties because you want third party returns turned over to you. They intrude into the middle of the attorney-client privilege. They disclose, you want to disclose contact information of not leading IRS figures but of subordinate IRS officials which people get very angry and that could subject these officials to all kinds of harassment and threats. There are tax protesters out there, they get very angry and they would like nothing better than to subject a lower level IRS official to all kinds of threats and you really, with this FOIA request, you're really striking at the heart of the process and you might get freedom of information but you're compromising privacy interests of third party taxpayers and you're compromising privacy interests that people that are performing mid-level functions for the government, they don't deserve to be threatened and harassed. You're trying with this FOIA request to really impair a process which is not our favorite but is necessary to the functioning of the whole government. I'm out of time but I'm happy to address the court if the court would like to hear a response. You want to think about it and address, make it part of the deliberative process and address it on rebuttal. How's that? All right. Because you do have some time, you do have some time for rebuttal. I'm going to give you the last word, I promise. Okay. Thank you. All right. Ms. Wolfinger. Good morning, your honors. Gretchen Wolfinger for the Internal Revenue Service. With regard to the general point about the in-camera review and the Vaughn Index and Judge Brinkman's opinion. Isn't the Vaughn Index issue moot once the in-camera court, it's intended to help the court make the decision when it doesn't look? Exactly, your honor. All right. And not only that, it was what Solers had requested. They've requested that the court review the documents in camera. The court did... The court doesn't have to review these documents all the time. Oftentimes, we're talking about hundreds of documents. Yes. And the Vaughn Index is very helpful in that process. Yes. But when the court's going to do the in-camera review, it seems to me at that point, the court's making a direct review of the documents vis-a-vis the statute. Yes. And we don't need to argue whether the index was okay. Yes. Yes. And my point is, they got exactly what they requested. And following on from that, Judge Brinkman, I think, made it clear she did an in-camera review because there were so few documents. But she was able to match the documents up against the declarations submitted by the IRS to conclude that, in fact, the documents were as represented in the affidavits and declarations. So, for example, she knew that what was submitted were, in fact, handwritten notes. It wasn't something else that when she looked at it said, oh, these aren't notes. And I think that... Is the standard fairly articulated to be a standard that would apply as if there were private litigation and the attorney were making the notes? Could you please repeat that a little louder, Your Honor? Standard under FOIA 5, Section 5, is that analogous to private litigation where an attorney would be making notes during the course of an interview and collecting data and putting down information? I guess... Analogous to an attorney work product. I guess it would be, except I'm a little bit thrown by the fact that that would be clearly covered by either attorney-client privilege or work product. But yet... Well, it may not in the public sector or in the agency situation. Yes. And the statute is written in a fashion that's trying to capture that, isn't it? Yes. And, in fact, that is exactly what the agent was doing. He didn't claim attorney-client privilege because I presume he's not an attorney, but he is doing the same thing. And I think Your Honor made the exact same point that this was not a one-way note-taking. It was two-way. He was having a conversation with the CPA. So, as you noted, the CPA perhaps discussed 10 different issues. If the agent only wrote down one or two, that was clearly his mental process focusing on what he considered significant or what he needed to address as part of the audit. I would also note that, generally speaking, with regard to the in-camera review, during the hearing, the attorneys for Sollers had an opportunity to clarify something if it was unclear. For example, they seemed to be concerned that the judge didn't make an explicit segregability finding about the notes. They had the opportunity at the hearing to say, Your Honor, I'm sorry, can we go back to the notes and are you finding that, in fact, there's no segregable material in the notes? So they could... How could Judge Brinkman make a segregability determination on those notes? They might as well be in Sanskrit. I mean, you can't read them. How can you segregate them? I don't think that they are, in fact, totally illegible. I think they're difficult... There's a couple of words in there you can read. And I think if you're familiar with the case, also in connection with the other documents that were submitted to her, you can read a lot more. But I think that she determined that, in fact, looking at everything in the notes and that they were taken during a conversation with the CPA, that there was nothing segregable. And, of course, when we discuss segregability, it's clear that, generally speaking, you don't produce a document to the other side where the only words on the document, everything else is blacked out, and you have a word, the, or and, or, or, that that's considered all non-segregable. I can move on to the other documents at issue and would particularly address anything that the panel has questions about. Is the DIF documents in or out? I don't know. They're out. I don't know if Solis agrees with that or not. Yes, I believe that they conceded that, that they didn't ask for those documents. That's why we're down from 12 to 10. Everything else, I think, the activity record communication, the graph and summary report, the emails and checklist, were all reviewed by the court in camera and found that the declarations matched up with what the, the documents, the declarations submitted by the IRS matched up with the documents and were, in fact, as represented under the exemptions and qualified under the exemptions. Judge Wilkinson made the point that with regard to the emails, that the names and contact information of the IRS employees were redacted, and I believe the court has already reached that issue in the judicial watch case. Is there anything further? I have nothing further unless there are questions from the panel. Let me see if my co-panelists. We have nothing further. Thank you, Your Honors. Ms. Tidros. I'm not going to interrupt you at all. You have the last word. Please feel free to ask as many questions as you would like. I do want to address the 6103 Exemption 3 issues. SOLRS was not asking for release of third-party information, and as the panel can see from the transcript, SOLRS had submitted authorizations. To the extent that these were four of the SOLRS employees that had provided authorizations, there was no 6103 issue. And again, the other issue that we had with respect to both the graph and the summary report is that the court, again, even though it could read these documents, we presume, did not make any segregability determination. So, and also for the checklist, sorry, not for the checklist, but for those documents, you could get rid of the identifying taxpayer information under 6103 and release the remainder of the document to SOLRS. What if the document referred to that taxpayer's information without, it seems to me that if you're going to, if you have an email or some kind of a document that refers to what another taxpayer did, deleting the name doesn't fully address the issue. It seems to me if that email's devoted to the other taxpayer's filing, that it's exempt, isn't it? Well, to the extent that there's information that is subject to 6103, whether it's information about the taxpayer's income. What if the panel said, I've looked at Joe Blow's tax filing and it's consistent with the taxpayers in this case. You take out the word Joe Blow and leave all the rest in, it's still no good because what it is doing, it's revealing what some other taxpayers filing did. But it's not telling you who the taxpayer is. So the purpose of 6103 is that the IRS doesn't release these types of documents, this 1040 information, so it protects Joe Blow. But if you get rid of the identifying information for Joe Blow, that it doesn't have a social security number, income information, or the name, Joe Blow is not damaged. Just because his information is out there. Tells about what Joe Blow's taxpayer, tells the nature of his filing, he took the very same deductions as the taxpayer did. Now, whether that's positive for the taxpayer or negative is another issue. But it does reveal that now there's a comparator that's been, and the comparator is now the information about the comparator is being revealed. But that would not harm Joe Blow, nor would Joe Blow's identity be revealed. But it does refer to another taxpayer. But the fact that... And it seems to me that the whole deal is not to start sucking in the information from other taxpayers' files who have a privacy interest in those things. Yes, to the extent those taxpayers did not fill out authorizations, their information should not be released. But if you can redact certain information and the trial court had the obligation to make the segregability determination, which it did not do from what we can see in the record, the rest of the page can be released to SOLRS. And this is a case where SOLRS was going through an audit and the service had noted SOLRS' political contributions. There was the recent Sixth Circuit case that came out two days ago dealing with being on IRS lists that target these types of conservative groups that delay their tax exempt status. So we are in an environment now where there are certain groups that are being targeted. SOLRS had... But you haven't... I didn't read that as a part of your brief. I didn't read that you were one of those being targeted. And that's why we went through the FOIA request right before we made those allegations. But in the reply brief that we had submitted in page 100 of the appendix, the service did note the political contributions of SOLRS. So this is not an issue that where they're trying to intrude upon a government agency just doing its job. The IRS is accountable to the taxpayers like any other government agency. But what we have here is that the IRS, we believe, could have released this information and redacted the third party information. But even standing here today, we don't know if the authorizations are valid. The service in its opposition brief noted they were still looking into the issue. But SOLRS has done what it can do to provide the service with authorizations so no one is violating 6103. Because these four taxpayers have said, it is fine with us for the service to release this information to SOLRS. So this is not an attempt to get information of third parties illicitly. The question of a balance here and the exemptions do exist to protect the privacy of third party taxpayers and not have them sucked in. And they do exist to protect the confidentiality. This is not an unusual situation. You go to buy an airline ticket or you're dealing with somebody behind a counter, people get very angry at airline agents, particularly when flights are canceled and the rest. So they give their first name. They don't give their last name. And there's a reason for that. And so we're trying to strike a balance here. And if this case had presented some, before Judge Brinkham, some evidence of targeting or ideological targeting, that would be one thing. But the record evidence on that is not clear and it wasn't brought primarily as that kind of a case. And this was brought as a FOIA case because of those concerns. But to the extent that the court is, and this is to address your point earlier, that this is someone who is just trying to get to the service and cause these problems. And this is an agency doing its job. Well, the taxpayers do have an obligation to the agency, but the agency also has an obligation to the taxpayers. And that's fair at a very general level. But we obviously have these very specific exemptions. Is there anything further that you have? We've given you some extra time. But is there any final statement you want to make? No, we would request that just that the court review these documents to the extent it has not reviewed them in a de novo standard. They're very short. We've looked at them. They're 10 pages. And I can tell you, I've looked at every page from top to bottom. And if the court can make a segregability determination, we would request that the court do so. Are the diff documents in or out? They're out. OK, good. All right. Thank you very much. And we'll come down and greet counsel. And we will move into our next case.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, David C. Norton